```
                 UNITED STATES BANKRUPTCY COURT
                FOR THE NORTHERN DISTRICT OF IOWA
                         WESTERN DIVISION
```

IN RE:

MARK F. ROHDE                                     Chapter 7
TAMERA A. ROHDE

    Debtors.                              Bankruptcy No. 08-00031S

HABBO G. FOKKENA,
U.S. Trustee

    Plaintiff

vs.                                          Adversary No. 08-9053S

MARK F. ROHDE

    Defendant.

### DECISION: OBJECTION TO DISCHARGE

Habbo G. Fokkena, U.S. trustee, objects to the discharge of debtor Mark F. Rohde. Trial was held February 11, 2009 in Sioux City. Janet G. Reasoner, Assistant U.S. trustee, appeared as attorney for Fokkena. Donald H. Molstad appeared as attorney for Rohde. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

Fokkena contends that Rohde's discharge should be denied because Rohde knowingly and fraudulently made a false oath in his case by submitting false responses in his statement of affairs, and because he has failed to explain satisfactorily loss or deficiency of assets to meet his liabilities. For the reasons stated in this decision, the court will deny Rohde's discharge.

Mark F. Rohde (hereinafter "Rohde") was raised in O'Neill, Nebraska. In 1981, he graduated from St. Thomas College in

Minnesota with a degree in criminal justice.  He moved to Omaha, Nebraska where he worked at Boys Town.  While in Omaha, he met and married Tamera Siecke (hereinafter "Tami").  The couple has three children.  Two of them are college students, and the youngest is an eighth grader.

Tami's parents operated the Iverson-Siecke Funeral Home in Vermillion, South Dakota.  Rohde attended mortuary school, and after graduation in 1985, he went to work for Iverson-Siecke.  He left that employment in May 1995, and that autumn, he went to work for Earnest-Michaelson Funeral Homes in Iowa.  I will dispense with setting out the name changes of Rohde's new employer, and for simplicity's sake state that the relevant corporation is now Mauer-Johnson-Earnest Funeral Homes, Inc.  It operates three funeral homes in northwest Iowa: Mauer-Johnson Funeral Home in LeMars, Johnson-Earnest Funeral Home in Kingsley, and Earnest-Johnson Funeral Home in Marcus.

In January 2003, Rohde became a shareholder in the corporation.  He purchased 90 shares from Nancy Johnson for $226,869.30 and 68 shares from Nancy Johnson's son Joel for $171,412.36.  He signed a promissory note to each of the sellers to pay for the shares over time.  Monthly payments were to be made over 15 years at 8-1/2 per cent interest.  Rohde pledged the stock as collateral for the loans.  Rohde's monthly payments were made by the corporation and treated as distributions to Rohde.

Rohde became a member of the corporation's board of directors. He continued as an employee, acting as the funeral director for the funeral homes in Kingsley and Marcus. His name became part of the trade names of those two funeral homes.

After he became a shareholder, Rohde said he started living beyond the family's means. Tami was working as a registered nurse in Sioux City. In 2003, the couple earned gross salaries of approximately $120,000.00, but in 2004, his salary as an employee at the funeral homes was reduced from $70,000.00 to $60,000.00 because of declining cash flow. This reduction did not apply to Rohde alone. Joel Johnson, the corporation's president, received the identical reduction in salary. Also, the tax consequences on the distributions for the stock purchase caused Rohde to experience cash flow problems.

Beginning in December 2003, Rohde began to embezzle from the corporation. Rohde testified that his embezzlements continued until March 2007. Tami was unaware of the embezzlements. He told her he was earning more than he actually was, and to prevent her from finding out, he destroyed bank statements and check registers on two of their bank accounts during periods when he was embezzling. The embezzlement involved taking funds that had been paid for funerals. The financial records for the corporation showed that the affected accounts remained unpaid. Rohde testified that sometimes he used embezzled funds to "pay

back" earlier embezzlements.

Joel Johnson, the corporation's president, became concerned about the abnormally high delinquent accounts receivable. Joel Johnson and his wife Nicollette wrote to and called persons who they believed had not paid for funerals. They received responses, many of them angry ones, that the bills had indeed been paid. Johnsons followed up by requesting proof of payment. The corporation obtained the help of its accountant, Federated Funeral Directors of America, to investigate missing payments; it also hired a private investigator.[1]

Johnson came to the conclusion that Rohde was responsible for the missing payments. Rohde learned on March 21, 2007 that there was an internal investigation underway into the funeral home corporation's finances. Johnson and the investigator, Bill Barbee, confronted Rohde on March 30, 2007. Johnson testified

---

[1] Fokkena offered into evidence as exhibit 6 the report of the private investigator. Rohde objected on the grounds that it was hearsay and not relevant. Fokkena contended that it was admissible because Rohde's attorney had not objected to the admission of the exhibit within the time required by the court's pre-trial order. Rohde's attorney responded that he had phoned attorney Reasoner prior to trial to state his objection. However, even the phone call notice was not within the time specified in the scheduling order (doc. 7, ¶ XIII(D)). Although aware of the untimely objection, Fokkena's attorney did not call the private investigator as a witness to testify to statements made by Rohde, despite the fact that the investigator had previously been shown as a witness on Fokkena's witness list (doc. 17). The court reserved ruling on the objection. The court now sustains the hearsay objection and does not admit exhibit 6.

that although Rohde initially denied the embezzlement, he admitted taking some funds for personal use.  On April 2, Johnson terminated Rohde's signatory authority over the funeral home's bank account.  On April 20, Johnson terminated Rohde's status as an employee, officer, and director of the corporation.

On June 1, 2007, on advice from his attorney, Gene Collins, that it would be "prudent," Rohde transferred his interest in the couple's home to Tami.  Rohde testified that he, himself, was concerned that the funeral home corporation might be able to take his home.

Also during June, Rohde consulted with attorney Collins about the possibility of filing bankruptcy.  By no later than September 4, 2007, he retained his bankruptcy attorney.

On November 28, 2007, Nancy and Joel Johnson brought a civil action against Rohde in Iowa District Court.  On the same date Mauer-Johnson-Earnest Funeral Homes, Inc. filed an action against Rohde also in state court.  On January 11, 2008, while the actions were pending, Rohdes filed their bankruptcy petition.

Rohde and Tami filed their statement of affairs and schedules on that date.  They were filed under oath.  Fokkena contends the statement of affairs was knowingly and fraudulently false regarding certain material matters.

On March 9, 2007, Rohdes had granted a security interest on their home to Farmers Savings Bank to secure an antecedent debt

in the amount of $34,000.00. The debt had been unsecured. The bank had already held a mortgage on the home to secure a different loan. Rohde testified that the March transfer was made in order to take advantage of income tax deductions for interest on home mortgages.

The information provided by Rohde on the statement of affairs did not disclose the transfer of the lien to secure the debt. This should have been disclosed in response to paragraph 10 of the statement (exhibit 1). Nor did Rohde disclose the transaction when asked by the trustee at the meeting of creditors whether he "had put any mortgages or liens on anything in the last year" (exhibit 2, p. 6, lines 23-25).

The statement of affairs also did not disclose the June 1, 2007 transfer by Rohde to Tami of his legal interest in the homestead. This should have been disclosed in response to item numbers 7 and 10 on the statement. Rohde testified at trial that he had forgotten about it because he was under stress and pressure. He said he had forgotten to inform his bankruptcy attorney of the transfer when his statement was prepared.

The State of Iowa brought criminal charges against Rohde. On August 18, 2008, he pled guilty and was convicted of theft in the first degree (exhibit 13), a felony. Iowa Code § 714.2(1). Restitution was ordered in the amount of $179,420.53, the pecuniary damages to the funeral home corporation. On the same

6

date, Rohde also pled guilty and was convicted of tax evasion. Iowa Code § 422.25(8). The court ordered restitution in the amount of $31,526.72, the pecuniary damage to the state. Rohde had agreed to both restitution amounts; however, he testified that he estimated his embezzlements to total amount $120,000.00 over three years. He says some funds taken by him were used to repay earlier takings.

Rohde's mortuary license was revoked by the Iowa Board of Mortuary Science Examiners on January 2, 2009. The revocation was for five years. To be eligible to reapply for the license, Rohde would, among other requirements, have to pay the restitution requirements (exhibit A). Rohde has settled the restitution obligation to the funeral home corporation by paying it $60,000.00, the money having been obtained from Tami's parents.

Fokkena's first objection is that Rohde gave a false oath in the case by failing to disclose in his statement of affairs the transfer to Tami of his property interest in his homestead on June 1, 2007 and by failing to disclose that on about March 9, 2007 he had granted a security interest in the home to Farmers Savings Bank on account of an antecedent debt.

Information item number 7 on the statement of affairs required Rohde to disclose gifts aggregating more than $200 to family members in the one year prior to filing bankruptcy. There

is no evidence that the transfer was a sale.  Item number 10 on the statement required Rohde to list all property transferred not in the ordinary course of his business or financial affairs, within two years prior to filing.  The transfer to Tami should have been disclosed certainly under one if not both items.

Rohde argues that the failure to show the transfer of the real estate interest to Tami was not material because by virtue of his homestead claim, a bankruptcy trustee would not be able to recover the transfer of exempt property as a fraudulent conveyance.

Rohde's statement of affairs was signed by him under penalty of perjury (exhibit 1, p. 17).  His written declarations therein have the force and effect of oaths. <u>Golden Star Tire, Inc. v. Smith (In re Smith)</u>, 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993). In order for a false oath to bar a debtor's discharge under 11 U.S.C. § 727(a)(4), the debtor's statement must be material and made with fraudulent intent.  <u>Korte v. United States of America (In re Korte)</u>, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001).  "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."  <u>Mertz v. Rott</u>, 955 F.2d 596, 598 (8th Cir. 1992)(quoting <u>Palatine Nat'l. Bank of Palatine, Ill. v Olson (In</u>

re Olson)), 916 F.2d 481, 484 (8th Cir. 1990)).  In Olson, the court stated that the subject matter of the false oath is material if related in a "substantial" way to the debtor's business transaction and the extent of his estate.  Id.,916 F.2d at 484.

The failure to schedule an asset or to list a pre-petition transfer is not immaterial merely because the asset might have been claimed exempt or because the transfer ultimately may not be recoverable under a trustee's avoidance powers.  Debtors are obligated to disclose their assets and transactions as requested and leave to trustees or creditors the impact on their estates.  It should not matter whether in the end a transfer is avoidable or recoverable.  It is not a debtor's prerogative to assess the impact of transactions on his bankruptcy estate and omit those he thinks are immaterial.  "It does not matter whether any specific monetary harm resulted from the false oath."  Fokkena v. Tripp (In re Tripp), 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998).

Rohde's failure to disclose the transfer of his interest in the homestead, a substantial asset, was significant to his financial affairs.  It was a material omission.  I find also that the misrepresentation was made knowingly and with intent to deceive.  Rohde was concerned that creditors might reach the home.  He transferred it to Tami less than seven months prior to filing.  He was considering bankruptcy at that time.  He did not

disclose it at the meeting of creditors when asked if he had transferred anything away in the last two years. Tami said she had not; Rohde kept silent (exhibit 2, p. 7, lines 2-4). I also find that his credibility as a witness was impeached by evidence of his conviction of a crime involving dishonesty. I therefore do not believe his explanation that he merely forgot to disclose the transfer of his interest in his homestead real estate.

  The transfer of the mortgage to Farmers Savings Bank on account of an antecedent debt also was a material transaction. The mortgage was for $34,000.00. It does not matter that at trial it was shown that the transfer was made outside of the 90-day preference period. Rohde was asked on item 10a of the statement of affairs to disclose property transferred as security within two years of his filing his bankruptcy petition. He was not required to disclose transfers made in the ordinary course of his business or financial affairs. This did not appear to be an ordinary course transfer. He does not contend it was. His transfer was made a few years after the loan was received, and therefore I find it was not made in the ordinary course. He should have disclosed the transfer and left it to the trustee to determine how the transfer of the mortgage affected the estate. Also, when asked by the trustee at the meeting of creditors whether he had put any mortgages or liens against anything in the last year, he replied, "no" (exhibit 2, p. 6, lines 23-25). He

offered no excuse at trial for his failure to disclose the transfer. I find that failure to list the transfer on his statement of affairs and in his testimony was a material omission made with intent to deceive.

Rohde's failures to disclose the transfer of the home and the transfer of the mortgage on the home were material misrepresentations and constituted false oaths in his bankruptcy case. Accordingly, Rohde will be denied discharge under 11 U.S.C. § 727(a)(4).

Fokkena objects to discharge also on the ground that Rohde has failed to "explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). Fokkena contends that such assets include the monies embezzled from the funeral homes. Rohde contends, however, that an explanation of the loss or deficiency in embezzled funds is not required under § 727(a)(5). He asserts this is so because embezzled funds, if they still existed, would not be recoverable by the bankruptcy trustee for the benefit of general creditors. He asserts that such funds would be the subject of a constructive trust held by debtor for the benefit of the funeral homes. Fokkena disagrees, but offers the court no authority in support of his opposition.

A constructive trust is an equitable remedy imposed by Iowa courts to prevent unjust enrichment. Benson v. Richardson, 537

N.W.2d 748, 760 (Iowa 1995). It may be imposed because of fraud. Id.; Berger v. Cas' Feed Store, Inc., 577 N.W.2d 631, 632 (Iowa 1998). The imposition of a constructive trust on a bankruptcy debtor's property would give the beneficiary, or true owner, an equitable interest in the property superior to the interest of the debtor or the trustee in bankruptcy. N.S. Garrott & Sons v. Union Planters National Bank of Memphis (In re N.S. Garrott & Sons), 772 F.2d 462, 467 (8th Cir. 1985); 11 U.S.C. § 541(d).

To establish the trust, "it is necessary that there be a res or specific fund on which the trust may be fixed." Homolka v. Drahos, 247 Iowa 525, 529, 74 N.W.2d 589, 591 (1956). The party seeking to establish the trust must identify the property or its proceeds and show that it is in the possession of the party sought to be charged. Id. In Iowa courts, the proof must be by clear, satisfactory, and convincing evidence. Benson v. Richardson, 537 N.W.2d 748, 760 (Iowa 1995). Tracing, itself, is, however, a question of federal law. Connecticut General Life Ins. Co. v. Universal Insurance Co., 838 F.2d 612, 618-619 (1st Cir. 1988). In the Connecticut General decision, the court held that "mere commingling of the trust property with other property of the bankrupt corporation ... does not defeat" the claimant's claim. Id. at 619. But:

> [o]n the other hand, "[t]here can be no recovery ... where all that can be shown is enrichment of the trustee. [The trust property] must be clearly traced and identified in specific property. It is

>  insufficient to show that trust property went into the general estate and increased the amount and value thereof."

Id. (quoting In re United Cigar Stores Co., 70 F.2d 313, 316 (2nd Cir. 1934)). "[A] constructive trust creates a trust in specific property, not an amorphous 'amount.'" Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.), 371 F.3d 397, 402 (8th Cir. 2004).

Because of a failure to adequately trace embezzled funds, they may be included in the embezzler's bankruptcy estate, and the injured party may share merely as a general creditor. One treatise agrees that "[i]f the trust fund or property cannot be identified in its original or substituted form, the purported beneficiary becomes merely a general creditor of the estate." 5 Collier on Bankruptcy, § 541.11[5](15th ed. rev. 2008).

Thus, the mere potential for a constructive trust as to embezzled funds does not relieve a bankruptcy debtor from explaining the loss or disposition of the embezzled funds. The Eighth Circuit Court of Appeals has determined (in a case where the injured party had filed bankruptcy) that "[u]ntil a court grants the victim such a constructive trust remedy, ... the victim merely has a right to seek such a remedy." United States of America v. Brimberry, 779 F.2d 1339, 1348 (8th Cir. 1985). It would seem, therefore, that until a constructive trust would be imposed, Rohde would have cognizable property rights in all the

13

assets which he held at the time he filed.

   Rohde had significant income from embezzlement.  He had an obligation to explain satisfactorily any loss of assets or deficiency of assets to meet his liabilities.  11 U.S.C. § 727(a)(5).  Once an objecting creditor produces evidence of the existence of assets, the burden shifts to the debtor to explain satisfactorily his loss.  <u>Chalik v. Moorefield (In re Chalik)</u>, 748 F.2d 616, 619 (11th Cir. 1984).  The explanation must convince the judge.  <u>Id.</u>  "Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory."  <u>Id.</u>  The objector need not prove fraudulent intent.  <u>Prairie Production Credit Assn. v. Suttles (In re Suttles)</u>, 819 F.2d 764, 766 (7th Cir. 1987); <u>Saluja v. Mantra (In re Mantra)</u>, 314 B.R. 723, 730 (Bankr. N.D. Ill. 2004).

   I conclude that the explanation regarding loss should not apply to property interests received at times too far removed from the date of filing bankruptcy.  Thus, despite the fact that Rohde embezzled approximately $179,000 over more than a three-year period, a satisfactory explanation would suffice with regard to the money embezzled during 2007, the year prior to bankruptcy.  Rohde testified that he embezzled about $40,000.00 per year.  During the same period, Rohde's and Tami's gross salaries would have totaled about $110,000.00, and he received $15,000 in 2007

when he cashed in his 401(k) account.

Rohde's only explanation for the loss of the embezzled funds was that they were spent on daily living expenses. He brought forward no documentary evidence of the use of the funds. Such a general explanation is not satisfactory. Rohde's discharge will be denied pursuant to 11 U.S.C. § 727(a)(5).

IT IS ORDERED that the discharge of Mark F. Rohde is denied pursuant to 11 U.S.C. §§ 727(a)(4) and 727(a)(5). Judgment shall enter accordingly.

DATED AND ENTERED  February 25, 2009

William L. Edmonds, Bankruptcy Judge

15